MATTER OF KOBAYASHI AND DOI

In SECTION 248 Proceedings

A-13054614-5

*Decided by District Director July 3, 1963*
*Approved by Regional Commissioner August 26, 1963*
*Approved by Deputy Associate Commissioner December 19, 1963*

Since managerial employees charged with the training or instruction and supervision of entertainers and waiters in a theatre restaurant are not employed in the "responsible capacity" required by 22 CFR 41.41, they are not properly classifiable as nonimmigrant employees of a treaty investor under section 101(a)(15)(E)(ii) of the Immigration and Nationality Act.

Both applicants are natives and citizens of Japan who last entered the United States on August 29, 1961 at which time they were admitted as nonimmigrants of the class described in section 101(a)(15)(H)(i) of the Act. Their last extension of stay expired on June 30, 1963. By their present applications, filed on May 6, 1963, they seek to change their status to that of a nonimmigrant employee of a treaty investor as defined in section 101(a)(15)(E)(ii). The applications were filed while they were continuing to maintain the status under which they were first admitted and their prospective employer, Kiyoshi Sakurai, has invested a substantial amount of capital in a theater restaurant in Honolulu called the Ishii Gardens, Inc. (On July 1, 1963 he was granted a change of his nonimmigrant status from visitor to treaty investor.)

The minimum statutory requirements have been met and the sole issue herein is whether the applicants are properly classifiable as "employees of a treaty investor".

I find no legal or administrative precedent setting out a clear definition of an "employee of a treaty investor" nor does the legislative history of section 101(a)(15)(E)(ii) throw any light on the question.

The pertinent State Department regulation (22 CFR 41.41) requires merely that an employee be "employed by a treaty investor in a responsible capacity".

The treaty in question is the *Treaty of Friendship, Commerce and Navigation* between the United States and Japan. It was signed in Tokyo, Japan on April 2, 1953 and entered into force on October 30, 1953 (4 UST 2063; TIAS 2863). The pertinent portions of the treaty are Articles I and VIII, which read:

Article I. Nationals of either party shall be permitted to enter the territory of the other party and to remain therein: (a) for the purpose of carrying on trade between the territories of the two parties and engaging in related commercial activities; (b) for the purpose of developing and directing the operations of an enterprise in which they have invested or in which they are actively in the process of investing a substantial amount of capital; and (c) for other purposes subject to the laws relating to the entry and sojourn of aliens.

Article VIII. Nationals and companies of either party shall be permitted to engage, within the territories of the other party, accountants and other technical experts, executive personnel, attorneys, agents and other specialists of their choice. Moreover, such nationals and companies shall be permitted to engage accountants and other technical experts regardless of the extent to which they may have qualified for the practice of a profession within the territory of such other party, for the particular purpose of making examinations, audits, and technical investigations exclusively for, and rendering reports to, such nationals and companies in connection with the planning and operation of their enterprises, and enterprises which they have a financial interest, within such territories.

Applicant Kobayashi is to be the manager of the Japanese Dancing and Entertainment Department of the restaurant; applicant Doi is to be the manager of the Service Department. In an interview conducted on May 16, 1963, an attempt was made to ascertain precisely the duties of these so-called managerial positions. The interview elicited only the information that Miss Kobayashi is to train and supervise the entertainers in Japanese art, culture and tradition. Miss Doi is to instruct and supervise 10 or more waiters and waitresses in the art of preparing and serving Japanese foods.

These positions, so vaguely described in the record, are not the accountants, technical experts, executive personnel, attorneys, agents and other specialists contemplated by the Treaty. If anything, they are service personnel, hired at a rather meager salary ($200 a month) to assist in the operation of a restaurant. They will have little to do with directing the operations of the enterprise.

Even conceding, arguendo, that these positions could fit the category of "specialists" mentioned in the treaty, there remains the question of the applicants' ability to fill these positions. The record establishes only that they are entertainers of a type commodity referred to as line dancers. (Indeed, their original classification as persons of distinguished merit and ability under section 101(a)(15)(H)(i) is highly questionable but is not in issue here.) The record is completely devoid of any evidence tending to show that these applicants have even slight experience in the managerial or executive field.

It is concluded that the applicants have failed to establish that they will be employed in the responsible capacity required by 22 CFR 41.41 and that they are accordingly not properly classifiable as non-immigrant employees of a treaty investor under section 101(a)(15)(E)(ii).

**ORDER:** It is ordered that the applications be denied.